# Exhibit 6

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

CAROL SMITH, Individually and as )
Personal Representative of )
the Estate of Erika Smith, )
)
        Plaintiff, )
) Civil Action No. 1:05-CV-00533 (RBW)
        v. )
)
HOPE VILLAGE, INC., )
)
        Defendant. )
)

### SECOND AFFIDAVIT OF DETECTIVE MICHAEL BRENT (RETIRED)

1. The following testimony is based on personal knowledge of the facts and matters contained herein to the best of my recollection.

2. I am the author of the document entitled "Summary of Anthony Kelly's involvement in the Russell/Smith Murder Investigation" ("Summary Report"). A copy of that document is attached at Exhibit A.

3. I drafted the Summary Report in connection with my participation in the investigation into the murders of George Gregory Russell and Erika Smith, and it is based on my knowledge of and participation in that investigation.

4. It was my customary practice to draft this kind of report in connection with my investigations.

5. I drafted and maintained reports like the Summary Report in the ordinary course of my regularly conducted police and investigative activities, as did other members of the Montgomery County Police Department at the time.

6. The Summary Report and other similar documents are thereafter maintained by Montgomery County authorities, in the ordinary course of business, as official records of police investigations.

I declare under penalty of perjury that the foregoing is true and correct to the best of my information and belief.

Dated: October 19, 2006

_____
Michael Brent

# Exhibit A

Smith 02049

1

### Summary of Anthony Kelly's involvement in the Russell/Smith Murder Investigation

On Tuesday August 6th 2002, at approximately 11:31PM, the Montgomery County Fire/Rescue and Police Department were dispatched the residence located at 9337 Columbia Boulevard Silver Spring Montgomery County Maryland for the report of a shooting. The complainant was identified as George Gregory Russell (B/M DOB: 06/19/1966) of that address. In a desperate phone conversation with emergency communications, a badly wounded Russell stated that he urgently needed police assistance because he had his daughter Erika Georgette Smith ( B/F DOB: 06/04/93), had been shot by an unknown intruder.

Numerous members of the Montgomery County Police 3rd District responded to the scene. Fire Rescue personnel also arrived at the scene. The responding officers and rescue personnel delayed the initial entry to the scene after a suspicious shot like sound rang out from within the residence.

The police ultimately forced the front door of the residence and gained entry. An open window at the rear of the residence was the only open portal. It is suspected that the intruder may have cut the screen then forced the window latch.

When Police officers entered the residence they located Russell and Smith on the second floor. Both had suffered from gunshot wounds. Russell was found on the landing at the top of the steps. Smith was located on the floor in her bedroom. She had suffered a single close contact gunshot wound to the upper back. Smith was pronounced dead on the scene.

Russell suffered from numerous gunshot wounds to the extremities and chest. Russell managed to tell the responding officers that he did not know their assailant. Russell described a black male with long bushy uncombed hair with grey and a beard. Russell ultimately died en route to the hospital. A police search for the intruder was unsuccessful.

A neighbor stated that at approximately 11:30 PM, shortly before the police arrived, he saw a figure dressed in white sweatpants and black sneakers running past a window. The neighbor said that the subject ran towards a fence that surrounds the back yard. The neighbor said that when the police arrived, he and a relative went to the attic to see what had happened.

Smith 02050      Smith 01984

14374

2

The neighbor said that he saw a white object cross the street and go out of view. The responding officers searched the area for a suspect but without success.

On August 8th 2002; a long time friend of Russell called the police after seeing news reports of the incident. This friend advised of telephone conversation between 10:30 PM through 11:30 PM. The friend said that she heard Russell's daughter in the back ground laughing and playing. The friend said suddenly she heard Erika scream "Daddy Daddy" in the background. The friend said that the screams sounded loud and menacing. The friend said that Russell screamed "Erika" and dropped the phone. The friend did not hear any other conversation or sounds. The friend assumed that Erika may have hurt herself. The friend fell asleep that night, but called throughout the next day to check their welfare. The friend later saw the news and called the police.

Russell and Smith were autopsied on August 7th 2002 by Dr Joseph Pestaner of the Office of the Chief Medical Examiner. Dr Pestaner examination confirmed that both Russell and Smith's death's were the result of gunshot wounds. Smith's gunshot wound entered from the back and exited the front chest. Smith also suffered several serious abrasions to the face. The abrasions were consistent with her having sustained blows to the face. Russell suffered eight gunshot wounds. Two projectiles were recovered from the body. The cause of their deaths was attributed to the gunshot wounds. Both deaths were ruled as homicide. See the autopsy report for details

During the course of the next several weeks the police department maintained custody of the Russell residence. The Russell residence was searched by the police investigators and Forensic Services Section technicians. Items of suspected evidence were processed on site or collected and analyzed for blood, latent finger prints, fiber/hair and DNA profiling. In addition, documentary evidence was collected and examined

Scores of items were collected or examined. The following is a synopsis of the pertinent items that were collected:

Included in the items of potential evidence was a piece of netting (CS-15) that was found on the ground outside of the left front of the residence. The netting was later found to contain thirteen fibers of varying types. Forensic technicians located a short dark hair/fiber (2CS3) on the ledge of the open kitchen window. A long hair/fiber (2CS4) was also located on this ledge. Four fibers (RV-04) were located on the porch on east side of the home. These items were all submitted to the Hair and Fiber Unit of the Crime Lab for analysis.

Smith 02051    mith 01985    14375

3

In addition, Officer David Wells, who was one of the officers who had secured the outside of the residence, located a paper merchandise label produced by the *Rubies Costume Company* (OS-1). The label was located on top of a fallen fence at the left rear of the residence. The label identified a model number (2045) and color brown for an item of merchandise but did not describe the item. The afore-mentioned items seemed to have been recently discarded as they had not suffered the effects of weathering.

Five (RP) .32 caliber fired cartridge cases (CS 1-5) found at the scene of the homicide were identified as being fired from a .32 caliber semi-automatic pistol. One projectile (CS-14) was located. Through further examination of the fired shell casings and fired bullets, a firearms examiner produced a list of gun manufactures that manufacture weapons that produce rifling impressions similar to those found on these bullets. The manufacturers include Astra, Beretta, FIE, Fn/Browning, Llama, Lorcin, Savage, Walther, Sauer & Sohn and JP Sauer.

See the case file for a detailed list of the evidence collected and examination results.

During the months of July and August 2002, Detectives of the Takoma Park Police and Metropolitan Police Departments began investigations into a string of street robberies that occurred in their jurisdictions.

One of these robberies occurred on August 7th 2002, a female victim was walking from the Takoma Park Metro to her home at 7307 Maple Ave, Takoma Park, MD. This victim said that a black male operating what she described a black and grey 4x4 that resembled a (Jeep Cherokee), asked her if she need a ride. She declined the offer. Moments later, the victim noticed the same vehicle driving by her in the opposite direction on Maple Avenue.

The victim advised that as she reached her driveway, a black male approached her from behind and told her that he had a gun. The suspect then demanded her purse. The suspect ordered her toward the back yard of her residence and demanded [oral sex]. The victim yelled for her brother. A neighbor heard her yelling and shined a flash light on the suspect. The suspect fired a shot at the neighbor. The suspect fled with the victim's purse. The suspect was described as a Black male 5'-6"-5'-10", 165 pounds, with a medium build and wearing dark clothing

Later that morning, at 1:00AM hrs, someone used a credit card stolen from the victim at an Exxon Gasoline Station located at 7401 Georgia Avenue Washington DC.

Smith 01986

Smith 02052

14376

4

The station's surveillance camera that is focused on the fueling pumps captured an image of what appeared to be a Chevrolet Tahoe SUV.

Property stolen from the victim was found later that morning in on Aspen Street NW Washington DC.

Katy Lynn Hill Investigation:

On August 9th 2002, at approximately 1150 PM, the Metropolitan Police Department investigated the death of a woman identified as Katy Lynn Hill of Seattle Washington. Hill was in town to attend a pen convention. Hill's body was discovered on the courtyard of the *Takoma Elementary School* at 6900 Piney Branch Rd, NW Washington DC. Hill had been shot in the head and body.

Pursuant to their investigations, DC detectives located four (RP) .32 caliber fired bullet casings and one projectile at the crime scene. Through the course of their investigation District detectives determined that numerous pieces of personal property had been taken from Hill during the murder. The items included a Palm Pilot, a Sanyo cell phone and a Canon Power Shot digital camera. No suspect was identified or apprehended.

The .32 caliber fired bullet casings found at the scene of the Russell homicides were later compared with the .32 caliber casings found at the Hill homicide. A firearms examiner determined that the .32 caliber casings found at both crime scenes were fired from the same weapon.

Takoma Park Chase of Tahoe 08/20/02:

On August 20th 2002 at 8:08 PM, detectives of the Takoma Park Police Department who had been working on a robbery task force, initiated surveillance in hope of locating the robbery suspect. During the police surveillance the detectives spotted a black and grey Chevrolet Tahoe (DC BE7385) which matched the vehicle that they were looking for in the August 7th robbery/sex assault. The vehicle was spotted at the *Pizza Movers Restaurant* at 6901 Laurel Ave. Takoma Park.

The detectives checked the tag and learned that it had been reported stolen. When they approached the vehicle, the driver sped from the area and led the police on a high speed pursuit. The pursuit ended when the driver ran a red light, struck a vehicle then crashed into a utility pole at Eastern Avenue and Sargent Rd in Prince George's County Maryland.

Smith 02053        Smith 01987            1437?

The driver of the vehicle fled on foot and was not apprehended. Two passengers were found inside the vehicle. They were identified as Tonya Denise Kie and her young son Mendel.

Further investigation revealed that the 2000 Chevrolet Tahoe had been reported stolen on July 1, 2002 from Howard County Maryland. The owner, Harold Hayes reported that his vehicle had been in for repair at the *True 2 Form* shop, Washington Blvd, Columbia MD when it was stolen from the lot.

While investigating that theft, Howard County officers found a stolen Toyota Camry at that location. It had been reported stolen through Takoma Park PD on June 20th, 2002 from 7600 block of Maple Ave. Takoma Park MD. (The day before the Tahoe theft)

Vehicle inventory:

The Chevy Tahoe was searched by Takoma Park Detectives. An inventory of the items found was obtained. The following is a partial list of the items found:

1. A backpack in the rear passenger compartment that contained two pistols. One Sauer & Sohn mod. 1913, .32 caliber ($240.00) and one Frommer Mod. Frommer Stop, 7.65 caliber pistol ($395.00). The detectives learned that the pistols had been reported as two of five pistol stolen in the August 1st 2002 burglary of the Potomac Trading and Collectables located at 3610 University Boulevard, Kensington MD.

   The burglary occurred between the hours of 1030 and 1109 PM. The perpetrator smashed a hole in the front window of the business and then smashed in display cases and made off with the weapons. Three pistols from the burglary remained outstanding. They included a .25 caliber Colt mod.1908semi-automatic, ($199.00) .380 caliber Beretta mod. 1934 semi-automatic ($400.00) and a .32 caliber J.P. Sauer mod. 38H, semi-automatic pistol ($495.00).

2. One RP.32 caliber bullet. (Matches both homicides)

3. A silver FC 9mm magazine

4. Ammo: 41 Rounds .25 caliber Winchester.

6

5. The investigators also located an assortment of lottery tickets. These tickets were determined to have been stolen during the robbery/sex assault on August 7th, 2002

6. In addition to the pistols the investigators located a curly black wig and a brown beard. The hair pieces were also secreted in the tire compartment of the vehicle.

7. Green New Testament bible with a name hand written in the presentation section at the front of the bible.

The recovered items were eventually submitted to the Montgomery County Crime laboratory for analysis.

### Follow up investigation:

Tonya Kie was later interviewed by the detectives. She told them that the driver of the vehicle was her husband Anthony Quentin Kelly. Kie said that she believed that the Tahoe belong to Kelly. She stated that Kelly carried handguns, and believed that he had one with him when he fled the Tahoe. She stated that they lived at 6666 Georgia Avenue, Apt 204 NW Washington DC.

Tonya Kie continued to provide information regarding Anthony Kelly. Kei told the investigator that she first met Anthony Kelly on May17th, 2002, as he was driving around the Takoma Elementary School. Kie said the she and Kelly married on August 14th 2002 after only a few weeks of knowing one another.

Further investigation revealed that Kelly had an extensive criminal history. The investigators learned that Kelly had been incarcerated for the past five years. He was sent to a half way house in Washington DC in December of 2001. Kelly was finally released in March of 2002. Kelly married Tiray Edwards February 16th 1996 before a trial. Pursuant to an interview, Tiray Edwards said that Anthony Kelly had actually forced her to marry him in order to prevent her testimony in that trial. A check of Kelly's criminal files in his District of Columbia cases reflects that no psychological issues have been raised in any previous criminal case.

On August 21,2002, Metropolitan Police Department Detectives executed a search warrant at Tonya Kie's residence located at 6666 Georgia Avenue Apartment 204, NW Washington DC.

Smith 02055    Smith 01989

14379

7

Several items were collected. Pursuant to the search, detectives located the Canon Power Shot digital camera taken from Kati Lynn Hill.

During further interviews with Kie, she recalled that [on the night of the Kati Lynn Hill Murder] Kelly called her residence and said that he was watching the police conduct a crime scene investigation at the Takoma Elementary school. Kelly said that the police were putting up yellow tape.

Kelly came home in the early morning following this conversation. Kie recalled that he was sweating profusely. Kie said that Kelly brought in a digital camera, credit cards, jewelry, and personal photo identification of a white female depicted with eye glasses. It was later determined that the digital camera was the one stolen from Katie Hill. The description of the female that Kie saw in the photo matched the description of Hill.

Metropolitan Police Detectives obtained the Sprint cell phone records from Kati Lyn Hill's stolen Sanyo phone. They determined that a call was place on August 10th 2002, the day after her death. The number of the phone that received the call was subscribed by a resident of The Aspen Court Apartments, where Tonya Kei and Anthony Kelly lived.

The detectives confronted this resident and learned that the number was actually her husband's cell phone. The husband said that they found the Sanyo telephone on the hood of their vehicle on August 10th 2002. He advised that the vehicle was parked in the 6700 Block of Whitier Street NW Washington, which is across the street from Kelly's residence. The resident said that he used the phone to call his personal cell phone to see if it worked. The resident said that he attempted to call the home number for the owner but with out success. The resident said that he did not know any of the principals in this case.

Kie also recalled that on August 1st, 2002 during the late evening hours, Kelly returned to their apartment carrying five handguns which she had not seen prior to that date. She recalled the date because she had made a rent payment with a cashiers check. Kie later produced this document. The burglary of the *Potomac Trading and Collectibles* occurred on that date, between 10:30 pm and 11:00PM. Two of the handguns recovered from the stolen Tahoe were two of the five handguns stolen in this burglary.

Tonya Kie said that a few days after the day that Kelly came home with the five guns, he sold one of the guns to her brother David Farewell. This sale to David Farewell was subsequently verified when the writer confronted Farewell with his sister's allegation. On October 10th, 2002

Smith 02056      Smith 01990

8

Farewell admitted that he had in fact purchased a handgun from Kelly.

Farewell turned over to the writer a Beretta .380 caliber semi-automatic pistol. This pistol was one of the five pistols stolen in the *Potomac Trading and Collectibles* burglary.

During the days following the police chase involving the stolen Tahoe, an intensive man hunt for Anthony Kelly was undertaken. Teams of investigators from Montgomery County, Metropolitan Police Department, and the US Marshals office joined forces to apprehend Kelly. On one occasion during the course of the manhunt, Kelly was spotted by a US Marshall in College Park Maryland. A foot pursuit ensued. In order to avoid capture Kelly leapt from a pedestrian bridge to creek several feet below the bridge. Kelly fled through the creek and escaped.

During the period of time in which Kelly was being sought, he maintained telephone contact with *Washington Post* reporter, David Farenholt. Farenholt said that during their numerous conversations, Kelly sought to deflect the focus of the investigation from him. He added that Kelly was always lucid, responsive and appropriate during these conversations.

On September 6th, 2002 at approximately 11:00PM, Anthony Kelly was arrested on Berwyn House Rd College Park MD on the strength of a warrant that charged him with the rape of Ramona Martinez that occurred on March 21st, 2002, a few days after his release from the a halfway house in Washington DC. Kelly had been identified as the suspect in this case through DNA analysis.

Kelly again tried to escape but was caught as he tried to discard a car key. The key belonged to a stolen Hyundai Accent that was parked near the scene of his arrest. The Hyundai was stolen on August 21st, 2002 (the day after he crashed the stolen Tahoe) from Temple Hills MD. Clothing that matched the suspect's attire in the Martinez rape i.e. (black coat and jogging pants) was found in the vehicle.

Items of personal property were collected. The writer located on the back of a cellular phone document, a hand written address for Potomac Trading and Collectibles.

During subsequent review of Kelly's cell phone records, the investigators learned that the phone number for Potomac Trading and Collectible was called on July 30th 2002, at about 4:30 PM, two days before the burglary.

Smith 02057   Smith 01991

1438l

9

Follow up Results

<u>The New Testament bible:</u>

Pursuant to further investigation of the Russell/Smith Homicide the writer learned that George Russell had been romantically involved with a woman during the mid 1990's. During the crime scene investigation, the writer located the name of this woman in one of Russell's personal address books. The writer subsequently located this woman (who had married and changed her name) and presented her with the green New Testament bible found in the stolen Chevrolet Tahoe. She immediately recognized the bible and her signature. She explained that she regularly carried the bible with her during the period of time that she dated George Russell. This woman said that she lost track of the bible during one of her visits to Russell's' residence. At the time of their relationship, the woman lived in North Carolina. She said that the only person whom she visited in Maryland was George Russell. The woman added that she did not know Anthony Kelly or Tonya Kie.

<u>Rubies Costume Company:</u>

The writer contacted representatives of the Rubies Costume Company regarding the item card found outside of the Russell home. The representatives advised the writer that the manufactures label marked item number 2045 found at the Russell residence corresponds to a brown beard. The brown beard is shipped to retail outlets throughout the area. The writers subsequently obtained a new packaged beard to be used as comparison with the beard found in the recovered Tahoe.

<u>Hair and Fiber Examination</u>

Pieces of evidence were subsequently analyzed by an examiner of the Montgomery County Hair and Fiber unit.

The examiner compared evidence submitted to the lab i.e., (1.)The netting found outside of the residence, the two fibers found on the open window at the rear of the residence, four fibers found on the porch, the two hair pieces found in the stolen Tahoe and the newly purchased beards.

Smith 02058      Smith 01992                    14382

10

The examiner concluded that the netting found outside of the Russell residence is like the netting that was part of the packaging of the newly purchased beard in terms of size, design, color, composition and construction. He said that the two nets were almost certainly manufactured by the same company. For this reason, the examiner concluded that the netting found at the Russell residence could have been the companion net of the beard found in the Tahoe when that beard was first purchased.

The examiner concluded that the purchased beard (Rubies item 2045) matched the beard found in the Tahoe in size, color, design, construction and composition. He added that they were almost certainly manufactured by the same company.

The examiner found nine strands of fiber in the netting discovered at the Russell residence. He concluded that the nine strands of fiber (black polypropylene filaments) and one of the fibers found on the ledge on the back window, and four fibers found on the side porch, matched the (polypropylene filaments) present in the construction of the black wig found in the stolen Tahoe and could have originated from that wig.

The examiner concluded that three fibers ( brown modacrylic filaments) found at the Russell residence, one on the window ledge and two in the netting, were present in the construction of the brown beard found in the Tahoe and could have originated from that beard.

The Hair and Fiber examiner summarized the results of his examinations by saying that there is an "extremely strong" association between the items recovered at the crime scene and the hairpieces found in the stolen Chevrolet Tahoe.

DNA (deoxyribonucleic) Examination:

Numerous items of evidence found at the Russell residence were submitted to the Montgomery County Crime Laboratory for DNA profiling. Included among those items was the hairnet found at the residence as well as the hairpieces found inside the stolen vehicle. The forensic chemist isolated a DNA profile from some of the items submitted. In scientific terminology, forensic chemist concluded that Anthony Kelly could not be excluded as the major contributor of the DNA found on the netting at the Russell scene. In addition Kelly could not be excluded as a contributor to DNA found on the hair pieces from the stolen Chevrolet Tahoe. As previously stated, Kelly had also been identified by DNA analysis as the suspect in the Ramona Martinez rape investigation.

11

### Stolen White Cadillac proximity to crime scene:

On June 14th, 2002 a victim reported to the Montgomery County Police Department that his White 1995 Cadillac Eldorado was stolen from the Exxon Gasoline Station located at 9331 Georgia Ave., Silver Spring MD. The victim said that he left the vehicle running, with the keys in the ignition. The victim reported that a Black male jumped into the vehicle and sped off heading north on Georgia Avenue towards the beltway.

The Exxon Gasoline Station is located at the corner of Georgia Avenue and Columbia Boulevard. The station is several feet from the side yard of the Russell residence. A narrow alley separates the two properties.

On June 20th 2002, a victim was walking from a friend's residence on Turkey Branch Parkway, Wheaton MD. This victim said that she noticed a white Cadillac pull onto an adjoining street and park. The victim said that as she continued to walk, a black male grabbed her from behind and placed a silver colored knife to her back. The suspect threatened to kill her she did not "give her some pussy". The suspect pulled her to the passenger side door of the vehicle and made her place her backpack on the floor. During the ordeal, the victim noticed scrawled handwriting on the front seat of the Cadillac.

The suspect took the victim to a wooded area where he forced vaginal intercourse. The suspect fled the area in the white Cadillac.

During the course of the investigation, the investigators interviewed relatives and acquaintances of Anthony Kelly. These individuals, who include Tonya Kei and Kelly's, father Roosevelt Kelly reported that Anthony Kelly operated a White Cadillac Eldorado at times during the summer of 2002

This victim was transported to the Shady Grove Adventist Hospital for treatment. A sex assault kit was performed. Pursuant to the completion of the kit, swabs were taken of Arias's vaginal area.

The swabs were subsequently submitted to the Montgomery County Crime lab for analysis. Forensic Scientist found the presence of sperm on the swab. The sperm is then analyzed for DNA. Samples of Anthony Kelly's DNA had been collected in conjunction with the Ramona Martinez rape investigation. The results of the examination concluded that Anthony Kelly was the major contributor of the DNA profile obtained from the sperm fraction of the vaginal swab collected from this victim.

Smith 02060     Smith 01994     14384

12

The stolen white Cadillac was later found abandoned on 6812 Redtop Dr, Hyattsville MD. When returned, the owner noticed that some one had written on the front seats. This scrawl was described by the victim as she struggled with her assailant.

Other stolen vehicle related to the case:

These vehicles had been reported stolen in the Washington DC Metropolitan area and were found to have been operated by Anthony Kelly during and after his release from the halfway house up to the day of his arrest.

01/08/02 2002 Chrysler Sebring tan:
Stolen: 619 Sligo Ave, Silver Spring MD
Recovered: 73 Galveston Street SW Washington. (05/10/02)
Note: This vehicle was stolen while Kelly was enrolled at the halfway house.

05/06/02 1997 Toyota Avalon Tan
Stolen: 4600 St Barnabus Rd Temple Hills
Recovered: 3208 Rhode Island Ave, Mt Rainer MD, and (6/10/02 Arrest).

06/30/02 1992 Toyota Camry Gold
Stolen: 7600 Maple Ave Takoma Park.
Recovered: Washington Blvd Columbia, (left where Tahoe taken)

08/21/02 2000 Hyundai Accent tan
Stolen: 4600 balk. St Barnabas Rd, Temple Hills
Recovered: Berwyn House Rd College Park MD, (09/05/02 Arrest)

This investigator remains available to discuss aspects of how Kelly presented up to and during his post arrest statement of September 7th 2002. A copy of the video taped statement has been provided. The investigator will also be available to provide information relative to Kelly's lengthy criminal history and contacts with the courts and criminal justice system.

Smith 02061        Smith 01995



The investigating officers are available to answer questions or explain aspects of the investigation that may not be readily apparent from the documents and tapes provided. The following are examples of Anthony Kelly's guile and ability to manipulate circumstances for his own benefit:

o Kelly's description of the subject from whom he allegedly purchased Katie Lynn Hill's camera matched the description of the bushy haired suspect who was described by the murder victim George Russell prior to his death. This investigator would invite the evaluating doctors to watch Kelly's video statement and then call regarding this point.

o When asked about his use of the beard and wig found hidden in the wheel well of the stolen Tahoe, Kelly said that the hair pieces were used as his Halloween costume. The investigators are aware that Kelly had been incarcerated during the previous five Halloweens.

o Shortly after Kelly's apartment was searched by District Investigators, Kelly called the apartment and left a message for Tonya Kie, the woman he was living with at the time of his arrest (the tape of this message is enclosed).

o While enrolled in the half way house, Kelly concocted phony employment records by enlisting a relative's assistance and producing false documents to support the position.

o Kelly ordered blank W-2 tax forms from a reputable business form company. Kelly then used these W-2 forms to create fictitious employees to support a loan application to a bank.

o Kelly has shown an ability to produce legal documents and pleadings. Examples include numerous law suits and motions filed with the court as well as law suits filed on behalf of himself and other inmates.

o Kelly has authored numerous business letters to companies requesting loans or employment. Though the information that Kelly provided was most often fictitious, his ability to formulate plans and follow accepted guidelines for resumes and applications was shown.

The above are merely a few examples of information developed during the investigation I would welcome the opportunity to discuss with you.

Submitted,

Detective Michael Brent
240-876-0045 – Cell
240-773-5087 – Desk
240-773-5093 – Detective John Buchan

Smith 02062            Smith 01996            14386