UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CAROL SMITH, | ) |
| Plaintiff, | ) |
| v. | ) Civil Action No. 06cv00633 (RBW) |
| UNITED STATES OF AMERICA, | ) |
| Defendant. | ) |

**REPLY TO PLAINTIFF'S OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS**

As set forth in the Memorandum of Points and Authorities in Support of Defendant's Motion to Dismiss, Plaintiff's complaint raises allegations that the United States committed negligence through the acts of three separate federal agencies. Specifically, Plaintiff alleges as follows:

1. That the United States Parole Commission (the "USPC") paroled Anthony Kelly based on representations that Kelly had received a GED which the USPC should have known were false, and that the USPC should have revoked Kelly's parole prior to the murder.

2. That the Federal Bureau of Prisons (the "BOP"), through its contractor Hope Village, Inc., failed to verify Kelly's receipt of a GED, as well as his employment status and residence, and further failed to return Kelly to prison.

3. That the Court Services and Offender Supervision Agency ("CSOSA") failed to meet with Kelly as often as required by CSOSA policies, and failed to timely request revocation of Kelly's parole.

In Defendant's Motion to Dismiss, the United States argued that (1) the Court lacks subject matter jurisdiction because Plaintiff filed her claims against the Federal Defendant well-outside the statutory time period mandated by the FTCA; (2) the Court lacks subject matter jurisdiction regarding Plaintiff's claims against the Federal Defendant arising out of (a) the alleged acts or omissions of the United States Parole Commission which are subject to absolute immunity; (b) the alleged acts or omissions of the United States Parole Commission and the Federal Bureau of Prisons which are barred by the discretionary function exception of the FTCA; and (c) the alleged acts or omissions of the Federal Bureau of Prisons which are barred by the government contractor exception to the FTCA; (3) the claims against the Federal Defendant are barred by the Public Duty Doctrine; and (4) Plaintiff further fails to state a claim as the Defendant owed no actionable duty of care to the Plaintiff or the decedent.

In response to Defendant's jurisdictional arguments, Plaintiff focuses her attention exclusively on the allegations regarding the actions of CSOSA, and fails to address any of the government's defenses with respect to the USPC or the BOP. Notably, Plaintiff did not even attempt to refute the application of quasi-judicial immunity to the USPC, the application of the "discretionary function exception" of the FTCA to the claims regarding the USPC and the BOP, nor the application of the "independent contractor exception" of the FTCA to all claims regarding the BOP. Consequently, all jurisdictional defenses asserted by the Defendant regarding the allegations of negligent conduct by the USPC and the BOP are conceded.

With respect to the allegations regarding the alleged negligent supervision of Mr. Kelly's parole by CSOSA, Plaintiff has failed to demonstrate that her FTCA claim was timely filed, and has further failed to establish any factual or legal considerations which justify the tolling of the statute of limitations. Finally, Plaintiff's skewed interpretation of the case law in the District of

Columbia fails to demonstrate that CSOSA owed any specific and foreseeable duty to Plaintiff or Erika Smith. Accordingly, this Court should grant Defendant's Motion to Dismiss.

I. **PLAINTIFF'S CLAIMS ARE UNTIMELY**.

Defendant does not deny that the event was traumatic for Plaintiff, or that she suffered mental anguish as a result of the incident. Indeed, Defendant is not insensitive to the horrific acts of Mr. Kelly in this case. However, as is demonstrated below, Plaintiff's argument that her mental anguish should toll or somehow delay the application of the statute of limitations has no legal support, and, in fact, has been rejected by the D.C. Circuit Court.

A. **The Accrual of An FTCA Claim is Not Dependent Upon the Plaintiff Becoming Aware of the Killer's "Identity."**

In her Opposition to Defendant's Motion to Dismiss, Plaintiff attempts to impose a strained definition of the "accrual of the claim" under the FTCA so as to argue that a claim against the United States does not accrue until the assailant's identity is known to Plaintiff. Plaintiff's Opposition at 6. However, no court has imposed such a requirement, but rather the courts have held that the identity of the actor need not be known before the statute of limitations begins under the FTCA, and that the Plaintiff must use the limitations period to investigate and learn the identity of the actor. Dyniewicz v. United States, 742 F.2d 484, 486 (9th Cir.1984) ; Davis v. United States, 642 F.2d 328, 331 (9th Cir. 1981) ("With knowledge of the fact of injury and its cause the malpractice . . . the burden is then on plaintiff to ascertain the existence and source of fault within the statutory period"); Steele v. United States, 599 F.2d 823, 828, (7th Cir.1979) ("The immediate cause of his injury [electrical shock] was apparent and should have put him on notice of an invasion of his legal rights").

Moreover, the case relied upon by Plaintiff to support this strained interpretation of the

FTCA, Zeleznick v. United States, 770 F.2d 20 (3rd Cir. 1985), does not say what Plaintiff claims. Nowhere does the Court in Zeleznick limit the accrual of the cause of action to the "identity" of the murderer. Rather, the Court specifically and unequivocally held that "[d]iscovery of the cause of one's injury, however, **does not mean knowing who is responsible for it.** The 'cause' is known when the immediate physical cause of the injury is discovered." Id. at 23 (*quoting* Dyniewicz v. United States, 742 F.2d 484, 486 (9th Cir.1984)) (emphasis added). See also Dyniewicz, 742 F.2d at 486 (knowledge that decedents died in highway flood sufficient to notify plaintiffs of their claim against the United States, even when plaintiffs were ignorant of the fact that the government's actions caused the flood). The Court went further and required that, "when a person learns of his injury, he is on notice that there has been an invasion of his legal rights, and that he should determine whether another may be liable to him." Zeleznick, 770 F.2d at 23.

In the present case, Plaintiff was aware of the injury and its cause on August 6, 2002. At that time, Plaintiff was well-aware that there had been an invasion of her's and Erika's legal rights, and that the cause was homicide. It was then incumbent upon Plaintiff to use the FTCA's two year time period to "find and make a claim against a possibly responsible governmental agency." Zeleznick, 770 F.2d at 23. As noted in Defendant's initial Memorandum of Points and Authorities in Support of Defendant's Motion to Dismiss, "this was not an impossible task, as Plaintiff was informed of the killer's identity and his status as a parolee by the homicide detective in just over one month from the murder . . . , and the local media was able to gather and make public detailed information regarding Anthony Kelly's parole history within a matter of weeks." Memorandum of Points and Authorities in Support of Defendant's Motion to Dismiss at 11-12.

Plaintiff does not dispute these fact in her affidavit, nor does she make any showing that she was not aware of the cause of Erika's death prior to May 2003. The only fact Plaintiff has put forward is that she does not "remember" what she was told by the homicide detectives, which is insufficient to overcome the case law imposing a duty upon Plaintiff to then investigate the identity of the person[s] responsible, nor is it sufficient to overcome Det. Buchan's declaration stating that Plaintiff was informed of the killer's identity and his status as a parolee before September 5, 2002. See Pl. Exh. 1 at ¶ 7.

**B.      Plaintiff Has Failed To Assert Any Misconduct On Defendant's Part or Any Other Factor to Toll the Statute of Limitations Period.**

Plaintiff admits that "mental impairment does not 'toll,' *per se*, the FTCA statute of limitations...." Plaintiff Opposition at 10. Rather, Plaintiff argues that her mental state may be considered when evaluating whether she exercised due diligence in timely bringing her claim to the attention of the Defendant. Id. Plaintiff neglects to inform the Court that the determination of "due diligence" is not made unless the Plaintiff first can demonstrate "fraudulent concealment" on the part of the government, or some other fact that demonstrates that she had no way of knowing that she was injured.

It is well-settled that "disabilities due to insanity or mental incompetency will not toll the running of the two year statute of limitations of [the FTCA]." Zeidler v. United States, 601 F.2d 527, 529 (10th Cir. 1979). Rather the FTCA's statute of limitations "may be tolled only on a showing of 'fraudulent concealment' of the existence of a cause of action." Smith v. Hope Village, Inc., 05cv00633, slip op. at 5 (D.D.C. July 26, 2006) (*citing* Flemmings v. District of Columbia, 719 A.2d 963, 964 (D.C. 1998)). See also Norman v. United States, 467 F.3d 773, 776-77 (D.C. Cir. Oct 31, 2006) (equitable tolling can only be applied in an FTCA case where

5

the complainant demonstrates improper or concealment conduct on the part of the government, and not on the part of any third party). If such a showing of "fraudulent concealment" is made, or if the Plaintiff demonstrates that the existence of the injury was unknowable at the time of the injury (as in a medical malpractice claim), only then does the Court look into whether a party exercised "due diligence" in pursuing her claim. Orlikow v. United States, 682 F.Supp. 77, 84 (D.D.C. 1988). In the present case, Plaintiff does not, nor can she allege that Defendant fraudulently concealed its involvement, nor does she allege that the injury caused by a homicide was unknowable.

Even the case law cited and relied upon by Plaintiff imposes the requirement that she first demonstrate some fraudulent concealment by the government or unknown injury before an inquiry into her "due diligence" is made. Orlikow, 682 F. Supp. at 84 (the mental condition of the plaintiff can be considered when evaluating whether they exercised due diligence only after concealment by the government is demonstrated). Plaintiff takes selective snippets from the Court's opinion to create the impression that the mere mental disability alone was sufficient to toll the statute of limitations in that matter. See Plaintiff's Opposition. The Court's opinion, however, was not so generous. Indeed, the Court in Orlikow specifically found that the government's direct conduct (psychological experiments causing mental illness in unwitting subjects) interfered with the plaintiffs' ability to be aware of the fact that they were injured at all. Id. Thus, the Court held that only after there is a determination that the "actual fact that [the plaintiff] has been injured is unknown or the facts about causation may be in the control of the putative defendant," it then becomes incumbent upon the defendant to demonstrate that the Plaintiff failed to exercise "due diligence" in pursuing the claim. Id.

Even if this Court were to find that Plaintiff's injuries were unknown or that the

Defendant somehow concealed the facts, Plaintiff has failed to demonstrate "due diligence." In Sexton v. United States, 832 F.2d 629, 637 (D.C. Cir. 1987), the Court noted that the injuries to a complainant's loved ones may cause mental anguish that may cause them to instinctually "shut off from their minds the grim experience through which they have passed." Id. at 636. The Court went on and observed that "[f]or persons of any sensitivity this must be a difficult or even repugnant process. Yet, to protect defendants from stale claims, legislatures put potential plaintiffs to the hard choice of proceeding with such inquiries or risking loss of possible claims." Id. Thus, "any statute of limitations that puts inquiry burdens on a plaintiff, as this one [the FTCA] clearly does, entails a degree of ghoulish behavior," id. (citation ommitted), and the consequent mental anguish cannot excuse an untimely filing. Accordingly, the case law, as well as the facts of this matter, place the burden upon Plaintiff to do something to discover the government's alleged liability, irrespective of the mental anguish caused by the situation. Indeed, had she exercised any kind of diligence, she could have retained counsel or other representation who could have easily discovered the facts upon which she now bases her claim, and Plaintiff would have easily filed her FTCA administrative claim within two years of the murder of Erika Smith. Her failure to do so gives this Court no other choice, however reluctantly, than to dismiss the claim as untimely.

II.     **JURISDICTIONAL DEFENSES.**

    A.     **The Judicial Immunity of the U.S. Parole Commission Is Conceded.**

In her Opposition, Plaintiff fails to challenge Defendant's assertion that the actions and determinations of the U.S. Parole Commission are protected by quasi-judicial immunity. Accordingly, Defendant's assertion of immunity for the alleged acts and omissions of the U.S.

Parole Commission must be deemed conceded. LCvR 7(b); see United States v. Real Property Identified As: Parcel 03179-005R, 287 F.Supp.2d 45, 61 (D.D.C. 2003) ("If the opposing party files a responsive memorandum, but fails to address certain arguments made by the moving party, the court may treat those arguments as conceded") (*quoting* Hopkins v. Women's Div. General Board of Global Ministries, 238 F.Supp.2d 174, 178 (D.D.C. 2002)); Pate v. United States, 277 F.Supp.2d 1, 11 (D.D.C. 2003) (plaintiff's opposition that merely articulates the standard for applying the protections of immunity to a government employee's actions, and then generally asserts that the employee should not be entitled to protection without refuting the factual claim of the movant concedes the issue).

    **B.**    **CSOSA's Alleged Actions Or Omissions Relating to Any Request For the Issuance of a Parole Warrant are Immune from Liability.**

Plaintiff focuses her opposition to the application of quasi-judicial immunity to the claims regarding the CSOSA parole officer. In a generalized argument, Plaintiff contends that immunity does not apply to the daily functions of parole officers in supervising offenders in the community, as there is nothing "judicial" or "quasi-judicial" about these functions. See Plaintiff's Opposition at 14. Keeping in mind that the U.S. Parole Commission enjoys quasi-judicial immunity, a parole officer enjoys derivative immunity from liability when he operates as an arm of the Commission in the performance of its judicial functions.

Courts have held that probation officers are accorded "derivative" immunity due to the importance of their functions to their principals. See Cleavinger v. Saxner, 474 U.S. 193, 200 (1985) (judicial immunity protects not only the decision makers, but also other individuals who play an integral part in the decisionmaking process). In Turner v. Barry, 856 F.2d 1539 (D.C. Cir. 1988) (per curiam), the Circuit Court held that a probation officer enjoys derivative judicial

immunity when the probation officers serves "as an 'arm of the sentencing judge' .... [and] the prospect of damage liability . . . 'would seriously erode the officer's ability to carry out his independent fact finding function' and would, as a result, 'impair the sentencing judge's ability to carry out his judicial duties.' " Id. at 1540 (*quoting* Demoran v. Witt, 781 F.2d 155, 157 (9th Cir.1986)). The probation officer in Turner was, accordingly, held to be immune from liability while preparing presentence reports for the sentencing court, even if the report contained false and misleading information. Id. Likewise, the parole officer acts as the arm of both the courts and the U.S. Parole Commission when he prepares reports and recommendations regarding a parolee's performance under supervision.

In her Opposition, Plaintiff likens the parole officer's reporting to merely a ministerial matter, which requires no discretionary judgment on the part of the officer. Plaintiff, of course, completely ignores "the fact that the activity is routine or requires no adjudicatory skill renders that activity no less a judicial function" subject to immunity. Thompson v. Duke, 882 F.2d 1190, 1183 (7th Cir. 1989). See Wagshal v. Foster, 28 F.3d 1249, 1253 (D.C. Cir. 1994) (we do not think that their somewhat managerial character renders [the acts of a pretrial case evaluator] administrative for [judicial immunity] purposes"). Rather the Court must take a "functional approach" to the matter and consider three main factors: (1) whether the functions of the official in question are comparable to those of a judge; (2) whether the nature of the controversy is intense enough that future harassment or intimidation by litigants is a realistic prospect; and (3) whether the system contains safeguards which are adequate to justify dispensing with private damage suits to control unconstitutional conduct. Id. Here, the parole officer must make the initial determination as to whether a parolee's actions require the initiation of revocation proceedings, and the imposition of civil liability will, no doubt, create a realistic prospect of

future harassment or intimidation by parolees or litigants unhappy with that decision. Finally, the determination of the parole officer is subject to adequate constitutional safeguards as their decisions are reviewed by the U.S. Parole Commission, and, ultimately, a court of competent jurisdiction. Accordingly, the alleged actions or omissions of the CSOSA parole officer relating to any request for the issuance of a parole warrant satisfy the requirements for judicial immunity, and the Court should dismiss the portion of Plaintiff's claim arising from such conduct.

      **C.**      **Plaintiff's Failure to Dispute the Application of the Discretionary Function Exception to the U.S. Parole Commission and the Bureau of Prisons, must Be Treated as Conceding the Matter.**

Just as Plaintiff failed to dispute the application of quasi-judicial immunity to the U.S. Parole Commission, Plaintiff has, likewise, failed to dispute Defendant's argument that the actions of the U.S. Parole Commission and the Federal Bureau of Prisons ("BOP") are exempt from FTCA liability under the discretionary function exception. In the Motion to Dismiss, the United States strictly limited its argument regarding the discretionary function exception to only those claims arising from the alleged acts or omissions of the U.S. Parole Commission and the BOP. See Motion to Dismiss at 1 ("The Court further lacks subject matter jurisdiction regarding Plaintiff's claims against the Federal Defendant arising out of . . . (2) the alleged acts or omissions of the United States Parole Commission and the Federal Bureau of Prisons which are barred by the discretionary function exception of the FTCA...."). Nevertheless, Plaintiff spends the entire section arguing that the exception does not apply to CSOSA – which was never raised by Defendant. Plaintiff's Opposition at 15-21. Because Plaintiff does not refute the application of the discretionary function exception to the USPC or the BOP, the Court must treat the motion as conceded and dismiss all claims regarding the conduct of USPC and BOP.

**III.     PLAINTIFF HAS FAILED TO DEMONSTRATE THAT ERIKA SMITH WAS A KNOWN, FORESEEABLE PERSON TO WHOM THE DEFENDANT OWED A PARTICULARIZED DUTY.**

Whether a public entity owes a duty to a person is not an analysis that can occur with the benefit of 20/20 hindsight. Rather, the Court must look at the information available at the time the alleged duty arose. Here, there is no evidence or allegation that, at the time of his community supervision, Anthony Kelly was known to have committed acts of violence upon the public at large. Rather his one criminal conviction for a crime of violence stemmed from a domestic incident involving only family members. Thus, the cases relied upon by Plaintiff do not apply here where she has presented absolutely no evidence that CSOSA acted affirmatively in any way to place Anthony Kelly in a position near Erika Smith, nor has Plaintiff presented any evidence from which this Court may find that Erika Smith was a known, foreseeable victim prior to the murder.

    **A.     The Public Duty Doctrine Bars Liability.**

The public duty doctrine is a defense recognized under District of Columbia case law for protecting government entities from liability for duties owed to the general public. Klahr v. District of Columbia, 576 A.2d 718, 720 (D.C. 1990). Thus, the scope and application of the public duty doctrine is determined as a matter of District of Columbia law, as is interpreted by the District of Columbia Court of Appeals.

In an attempt to undermine the application of the public duty doctrine here, Plaintiff misuses and mischaracterizes the language in Klahr, in order to create the impression that the D.C. Court of Appeals has agreed that liability may be imposed where the public entity is supervising a "dangerous person." See Plaintiff's Opposition at 23. Nowhere does the Court of

11

Appeals in Klahr create such an exception. Indeed, the Court in Klahr refused to follow the Circuit Court's interpretation of the public duty doctrine in White v. United States, 780 F.2d 97 (1986). See Klahr, 576 A.2d at 720. Instead, the D.C. Court of Appeals held that there is only one exception to the public duty doctrine, and that is where a plaintiff alleges and proves two things: (1) a direct or continuing contact between the injured party and a governmental agency or official, and (2) a justifiable reliance on the part of the injured party. Id.

The only other case relied upon by Plaintiff was, again, the D.C. Circuit Court's decision in Rieser v. District of Columbia, 563 F.2d 462, 478-79 (D.C. Cir. 1977), modified in part, 580 F.2d 647 (D.C. Cir. 1978). In that case, the Circuit Court found that a special relationship existed where a parole officer with detailed knowledge of a parolee's criminal and sexually abusive history assisted the parolee in obtaining employment at an apartment building where he raped and murdered several women living in the apartment building. Rieser, 563 F.2d at 478-79. Thus, the Court found, the actions of the parole officer made the killer "a virtual member of the victim's household," thus "present[ing] a specific and unreasonable risk of harm to the [victims], therefore giving rise to a special duty toward them." Id. at 479. The reasoning in that decision, however, was specifically rejected by the D.C. Court of Appeals in Cunningham v. District of Columbia, 584 A.2d 573, 575 n.3 (D.C. 1990). Accordingly, Reiser is not a reflection of the tort law in the District of Columbia, and is of questionable authority.

**B.     The Federal Government Owed No Duty of Care to Erika Smith.**

In any event, even if the Court were to accept the exceptions created in Rieser and White, neither applies to the facts in this matter. Unlike the parole officer in Rieser, the Federal agencies in this case did not knowingly make Kelly a "virtual member" of Erika Smith's household, nor did Kelly pose a "specific or unreasonable risk" to Erika Smith **in particular**.

12

Similarly, White involved a specified threat made to a specified victim by a person who was ordered to be "confined" by the courts. White v. United States, 780 F.2d 97, 101, 103 (D.C. Cir. 1986).[1/] See also Hoehn v. United States, 217 F.Supp.2d 39, 47 (D.D.C. 2002) ("[O]nly custodial circumstances give rise to a duty to control" dangerous persons). Thus, parole officers have been held to owe no duty to victims of parolees because they did not have custody over the parolee. See Fox v. Custis, 372 S.E.2d 373 (Va. 1988).

A case that is especially illustrative of the limits of Plaintiff's arguments is the very recent decision by the Court of Appeal for the First Circuit in McCloskey v. Mueller, 446 F.2d 262 (1st Cir. 2006). In McCloskey, the Court of Appeals applied facts similar to the present to the very same arguments made by Plaintiff here. An employee of the Federal Bureau of Investigation received a telephone call from a person admitting to robbing a bank and offering to turn himself in. Id. at 264. The employee made no effort to follow up on the call or to investigate the claimed robbery. Id. The very next day, after waiting for the FBI to arrive and arrest him, the caller went on a killing spree, murdering several men, including Phillip McClosky. Id. at 265. First, the Court of Appeals held that a "special relationship" sufficient to trigger the exception similar to that found in Rieser cannot be demonstrated by a "random member of the public at large." Id. at 268. "This is so even if the prospective harm is substantial and 'the actor realizes that he has the ability to control the conduct of the third person, and could

---

[1/]    Notably, even the Circuit Court in White recognized that duty to a third party existed "only if the victim is identifiable." Id. 101. See also Hoehn, 217 F. Supp. 2d at 47 n.7 (declining to extend a duty to a hospital whose heavily medicated patient crashed a car into plaintiffs who were not identifiable or foreseeable); accord Simpson v. Braider, 104 F.R.D. 512, 521 n.13 (D.D.C. 1985) ("liability of psychiatrists should be predicated on a rule of 'specific threats to specific victims,' such a rule being a workable, reasonable, and fair boundary") (internal citations and quotation marks omitted). Plaintiff points to no evidence to demonstrate that Erika Smith was an identifiable and foreseeable victim.

do so with only the most trivial of efforts.'" Id. (*quoting* Restatement (Torts) at § 315). Second, the Court held that an FBI agent's receipt of a telephone call by the third party wanting to turn himself in for a prior violent offense did not create the requisite "control" similar to that in White. Id. at 269. Because the FBI never had custody over the caller from which a private individual can be held to be liable to a general member of the public, no FTCA liability could be imposed upon the United States.

Plaintiff repeatedly cites to Mr. Anthony's convictions in order to pigeonhole him into the "dangerous person" category required under White. However, unlike the killer in White, Anthony Kelly did not escape from a penal or psychiatric institution. Although Kelly was initially convicted and incarcerated for a violent offense, there is no statutory presumption that prisoners and parolees, as a class, must be considered dangerous or subjected to custodial control once they have served their sentences and been lawfully released. Unlike the mental hospital in White, the federal agencies in this case exercised legitimate discretion in transferring, paroling, and declining to rearrest Kelly. Furthermore, as a matter of public policy, imposition of a duty of care for the victims of post-release prisoners and parolees could be extremely burdensome to prisons, parole boards, and the Federal Government. Agencies might be driven to extend prison stays beyond what is deemed necessary or desirable, or other undesirable consequences may follow. Therefore, Plaintiff has not established that Kelly was or should have been known to be dangerous, either as a member of a class or as an individual, and this Court should not impose a duty. Accordingly, Plaintiff's Complaint should be dismissed for failure to state a claim.

Nor did the United States have the requisite "custody" over Anthony Kelly to fall within the exception created by White, because supervision of Kelly was not constant. See Thomas v. City Lights School, Inc., 124 F. Supp. 2d 707, 712 (D.D.C. 2000) (*citing* Abraham v. Wayside

14

Cross Rescue Mission, 682 N.E.2d 1240, 1244-45 (Ill. App. 1997) (holding halfway house did not "take charge" of an inmate where, *inter alia*, the inmate was permitted to leave for work each day, and thus halfway house owed no duty to protect wife who was stabbed by the inmate)). Moreover, as Plaintiff alleges, no agency had any knowledge that Kelly had violated any condition of his release or parole until shortly before the murder of Erika Smith took place. See Complaint at ¶¶ 16, 17, 21, 22, 25. At no time prior to his arrest did Kelly, within the knowledge of any federal agency, express or exhibit a propensity to physically injure members of the public at large or Erika Smith, least of all issue specific threats against specific individuals. That Anthony Kelly would **specifically** break into the home of Gregory Russell in Silver Spring, Maryland, and murder Erika Smith was not a foreseeable consequence of any danger that Kelly posed. Therefore, despite the tragic circumstances of Erika Smith's death, Plaintiff has simply not alleged facts sufficient to establish that the Federal Government owed an actionable duty of care to protect Erika Smith (as opposed to anyone else in the public) from Anthony Kelly. Accordingly, Plaintiff's Complaint should be dismissed for failure to state a claim.

Respectfully submitted,


  /s/ Jeffrey A. Taylor
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney


  /s/ Rudolph Contreras
RUDOLPH  CONTRERAS, D.C. BAR # 434122
Assistant United States Attorney


  /s/ Darrell C. Valdez
DARRELL C. VALDEZ, D.C. BAR # 420232
Assistant United States Attorney
Judiciary Center Building
555 4th St., N.W., Civil Division
Washington, D.C.  20530
(202) 307-2843